IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 16 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

CHRISTOPHER A. CAMPER, )
    Plaintiff, )
     )
v. )    Case No. 7:04-CV-00403
     )
JO ANNE B. BARNHART, ) By:  Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY, )     United States Magistrate Judge
    Defendant. )

## MEMORANDUM OPINION

Plaintiff Christopher A. Camper ("Camper") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-4333, 1381-1383f. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the Court on cross-motions for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision.

## STANDARD OF REVIEW

The court's review is limited to consideration whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff is a thirty-five year old man who completed high school and one year of college. (Administrative Record, hereinafter "R.", at 21, 165.) Plaintiff's work history includes being an order taker, a convenience store clerk, cashier, security person, and a delivery driver. (R. 797, 798) Claimant last worked as an order taker, but claims that he left this job because he suffered a "mental breakdown" and due to his chronic back problems. (R. 296, 773)

On April 26, 2001, plaintiff filed applications for DIB and SSI. (R. 65-67) Initially, plaintiff claimed his disability commenced on December 31, 1993, but later amended his application to claim an onset date of December 25, 2000. After denial of plaintiff's claims initially and upon reconsideration, plaintiff filed a request for an administrative hearing. (R. 44-51) Following a hearing on July 10, 2002, the administrative law judge ("ALJ") denied plaintiff's request for benefits by opinion dated May 7, 2003. The decision of the ALJ became final when the Appeals Council denied plaintiff's request for review in a notice dated June 8, 2004. (R. 7-10) Plaintiff then filed this lawsuit.

Plaintiff's medical history dates back to 1993 when he injured his lower back carrying a sofa up a flight of stairs. (R. 497) Plaintiff indicates that his symptoms have waxed and waned since that time, increasing particularly in 2000 and again in 2002. (R. 497) Much of the medical treatment plaintiff has undergone has been conservative in nature, and plaintiff indicates that it has not been helpful. (R. 188, 329, 497)

Plaintiff's medical records also indicate that he has suffered from insulin-dependent diabetes which is poorly controlled because plaintiff has difficulty following the prescribed treatment, watching his weight, and exercising regularly. (R. 343, 352, 497) Plaintiff underwent

2

a surgical fusion of his left ankle in 1999. (R. 343, 352, 497) Plaintiff also has a history of pancreatitis which occurs two to three times a year. (R. 343, 352)

From September through December 2000, plaintiff saw Dr. Cyrus Bakhit of the Pain Management Center of Roanoke seven times. (R. 264-91) Plaintiff underwent a magnetic resonance imaging ("MRI") of his thoracic and lumbar spines, revealing degenerative disc disease and a small paramedian disc herniation at the T6-T7 level. (R. 283) Previous diagnostic tests including x-rays, MRIs, and CAT scans of plaintiff's cervical and lumbar spines performed in April 1997, June 1997, and November 1998 failed to show any disc derangement or herniation. (R. 195, 200, 261, 462) Dr. Bakhit's diagnostic impression was mid-back pain secondary to thoracic facet joint arthropathy, thoracic degenerative disease, low back pain secondary to lumbar facet joint arthropathy; obesity and deconditioning syndrome, generalized anxiety disorder, and depression. (R. 289)

Beginning in October 2000, plaintiff was treated by John F. Daugherty, M.D., a family physician at the Lewis Gale Clinic, who recorded plaintiff's complaints related to diabetes, back pain, gastroesophageal reflux disease, pancreatitis, asthma, and depression. (R. 321-51, 391-93, 473-74) Plaintiff also saw various specialists for diabetes, pancreatitis, back pain, and depression. Many of Dr. Daugherty's examinations of plaintiff were unremarkable. (R. 324, 330, 332, 336, 339, 344) Nonetheless, Dr. Daughtery on numerous occasions opined that plaintiff was unable to work. (R. 390-93, 476-78) In sum, Dr. Daugherty's conclusion was that plaintiff had severe, chronic back pain that did not improve despite aggressive treatment and that this condition disabled plaintiff from working in any capacity. (R. 393)

3

In February 2001, plaintiff saw Murray E. Joiner, M.D., a specialist in physical medicine and rehabilitation, who examined plaintiff and opined that he could not find any significant objective reason for plaintiff's ongoing complaints, or justification for further narcotic intervention. (R. 292) Dr Joiner also advised plaintiff against an invasive CT discogram of his lumbar spine, noting that "in the absence of more significant problems the examiner could not justify such an invasive procedure." (R. 292)

In August 2001, plaintiff underwent an x-ray and myelogram of his lumbar spine which revealed mild diffused disc bulge with anterior flattening of the thecal sac, but no significant associated canal or neural foraminal or lateral recess encroachment. (R. 510) Plaintiff was given a TENS unit to use for pain. (R. 401)

In October 2001, plaintiff saw Dr. William Humphries, a state agency consultative physical examiner, who conducted examinations of plaintiff's neck, back, and extremities, which were unremarkable. (R. 354) Dr. Humphries' examination included a lumbrosacral x-ray, which was within normal limits. (R. 356) Dr. Humphries diagnosed plaintiff with chronic post-traumatic mid-low back pain, without evidence of degenerative disc disease. (R. 356) Dr. Humphries opined that, based on the objective findings of his evaluation, plaintiff could perform medium work. (R. 356)

In December 2001, plaintiff saw Dr. Samarasinghe, M.D., at the Comprehensive Pain Management Center. (R. 494-501) Plaintiff underwent a nerve conduction study which revealed a left L5 radiculopathy, but it was opined by Dr. Samarasinghe's colleagues that the problem was likely due to inflammation and not due to spinal compression. (R. 495, 498) Dr. Samarasinghe disagreed with this assessment, stating that plaintiff's alleged back pain was discogenic and

4

discussed the option of surgery which was declined by plaintiff. (R. 505) Dr. Samarasinghe stated that his review of the previous imaging studies of plaintiff showed a multi-level degenerative disc particularly at L4/L5 and L5/S1 levels. (R. 501)

On April 4, 2002, plaintiff slipped on a wet floor and fell at a McDonald's restaurant following a trip to Virginia Beach. On April 5, 2002, plaintiff sought treatment at the Carilion Roanoke Community Hospital Emergency Room. (R. 394-404) Dr. Suzanne Strong examined plaintiff and found that plaintiff's back had a mild tenderness L4 to L5 and clearly produced pain. (R. 398) Plaintiff left prior to receiving any treatment.

Such was the state of the medical record as of the time the ALJ rendered her decision on May 7, 2003. After the ALJ's decision, but before the action of the Appeals Council on June 8, 2004, plaintiff underwent MRIs of the thoracic and lumbar spine at the University of Virginia Health System on January 26, 2004. The result noted by the examining radiologist regarding the thoracic spine was as follows:

> There is a large left paracentral disk protrusion identified at the T6-7 level. This abuts and severely distorts the left anterior lateral aspect of the spinal cord. There is no evidence of abnormal spinal cord signal. The remainder of the disks within the thoracic spine are unremarkable.

(R. 754) As regards the lumbar spine MRI taken on the same day, the impression of the examining radiologist was unremarkable and within normal limits. (R. 754)

This information was sent to the Appeals Council by letter dated March 5, 2004. (R. 753) The Notice of Appeals Council Action dated June 8, 2004 states that the Appeals Council considered this additional evidence but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 8)

5

## ANALYSIS

Plaintiff contends that the Commissioner's decision should be reversed for several reasons. First, plaintiff contends that the Commissioner improperly evaluated the evidence, including the evidence presented by the treating physicians and the claimant. Second, plaintiff contends that the Commissioner failed to provide a hypothetical question to the vocational expert ("VE") including all significant nonexertional limitations found by the Commissioner. Third, plaintiff argues that the Commissioner erred when the Appeals Council failed to explain its treatment of new evidence submitted to the Appeals Council following the ALJ's decision. The court is persuaded by plaintiff's third argument and believes that the objective evidence of a thoracic spine disk protrusion calls into doubt the decision grounded on prior medical reports. Because this case will be remanded to the Commissioner for consideration of the thoracic spine MRI, the court need not address plaintiff's first two arguments concerning the ALJ's evaluation of the treating physician's evidence or the sufficiency of the hypothetical question posed to the VE.

### I. Appeals Council's Treatment of Newly-Submitted Evidence

Plaintiff argues that this case should be remanded because the Appeals Council did not provide any specific explanation of its consideration of either the notes from his doctor or the additional medical records. Most significant among the new records is the MRI dated January 26, 2004 from UVA Hospital. The MRI is of the thoracic spine. The findings include reference to a "[l]arge left paracentral disc protrusion at the T6-7 level. This abuts and severely distorts the left anterior aspect of the spinal cord." (R. 754) Plaintiff contends the MRI objectively demonstrates that plaintiff has a medical condition consistent with his subjective complaints and

6

with the functional evaluation of his long-time treating physician, Dr. Daugherty. Plaintiff argues that this record also is consistent with an MRI study done in 2000 "which revealed presence of degenerative disk disease and a small paramedian disc herniation at T6-T7 level." (R. 283)

### A. **Legal Background**

The question whether the Appeals Council is required to make specific findings on evidence submitted after the ALJ's decision is a murky one implicating countervailing public policy considerations and evoking substantial debate across the country, the Fourth Circuit, and this district. Because of the Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 95 (4th Cir. 1991) decision, courts in the Fourth Circuit are required to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Given the mandate to review "any new and material evidence relating to the period prior to the ALJ decision," Id. at 95, the quandary which has perplexed courts is what make of the boilerplate language employed by the Appeals Council in its rote denials of review that it "considered the additional evidence" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 6-7)

In the words of one district court, this places courts in the perilous strait between the Scylla imposed by the requirement in Wilkins that the new evidence submitted after the ALJ's decision be reviewed along with the record as a whole, and the Charybdis which requires that the Commissioner, and not reviewing courts, determine the appropriate weight to be accorded such evidence. See Harmon v. Apfel, 103 F. Supp. 2d 869, 872 (D.S.C. 2000).

7

Although unpublished, the Fourth Circuit's opinions in Freeman v. Halter, 15 Fed. Appx. 87, 2001 U.S. App. LEXIS 16991, 2001 WL 847978 (4th Cir. 2001), and Hollar v. Commissioner, 1999 U.S. App. LEXIS 23121, 1999 WL 753999 (4th Cir. 1999), state that "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding additional evidence insufficient to change the ALJ's decision." Freeman, 15 Fed. Appx. at 89. In Freeman, the Fourth Circuit noted that the "magistrate judge did, however, analyze the supplemental evidence and correctly noted that Freeman's treating physician stated there had been no change in Freeman's symptomology or physical findings. Accordingly, we find no merit to Freeman's claims that the district court and Commissioner erred by failing to consider the additional evidence." 15 Fed. Appx. at 89. In Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103 (4th Cir. 2001), the Fourth Circuit took a slightly different tack, vacating and remanding a disability case because the Appeals Council did not explain its consideration of a disability assessment by a treating physician which was submitted to the Appeals Council after the ALJ's decision. In that case, however, the evidence was of a different nature than the cumulative evidence proffered in Freeman and consisted of medical reports and lab work from four separate visits by claimant to her treating physician. As a result, the court concluded that "[b]ecause of the ambiguity in the record, and in light of the treating physician rule, we believe the district court should remand this case to the Commissioner for further development of the record." 24 Fed. Appx. at 162.

In three separate opinions, courts in this district have concluded that the Appeals Council is not required by its regulatory scheme to provide a detailed explanation of its consideration of evidence submitted after the ALJ's decision. See Ridings v. Apfel, 76 F. Supp. 2d 707, 709

8

(W.D.Va. 1999) ("the Appeals Council is not expressly required by the regulations to state its rationale for denying review."); Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000) ("I agree with Judge Jones, see Ridings, supra, that the regulations do not explicitly require the Appeals Council to provide written findings with respect to any new evidence and its impact in light of the overall record and that this facilitates orderly decision-making within the agency."); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004). Others disagree. See Alexander v. Apfel, 14 F. Supp. 2d 839, 843 (W.D. Va. 1998) ("The court concludes that if the Appeals Council ostensibly considers the new, "interim" evidence in denying review of a claim, it is incumbent on the Appeals Council to give some reason for finding that the "interim" evidence does not justify further administrative action."); see also Harmon v. Apfel, 103 F. Supp. 2d 869, 873 (D.S.C. 2000); Hawker v. Barnhardt, 235 F. Supp. 2d 445, 452 (D. Md. 2002); Scott v. Barnhardt, 332 F. Supp. 2d 869, 878-79 (D. Md. 2004).

While the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding late breaking evidence, its failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances. As the court noted in Riley, "the agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided." 88 F. Supp. 2d at 580. Such a remand is necessary where the additional evidence is "conflicting," or presents "material

9

competing testimony," Riley, id.; is "contradictory," Smallwood, slip op. at 3-4; or "calls into doubt any decision grounded in the prior medical reports." Ridings, 76 F. Supp. 2d at 710.[1]

Thus, the court rejects plaintiff's argument that this case be remanded solely because the Appeals Council failed to provide an explanation for its consideration of the additional evidence. The task remaining for the court is to review the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained." Ridings, 76 F. Supp. 2d at 709. While "this task is a difficult one," id., it is not sisyphean, because it does not require the court to weigh the evidence, but rather merely to determine whether this additional evidence creates a "conflict," is "contradictory," or "calls into doubt any decision grounded in the prior medical reports." If so, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, then the case can be decided on the existing record without the necessity of a remand.

Such an approach is consistent with the definitions of "new" and "material" evidence employed by the Fourth Circuit in Wilkins. Wilkins considers evidence to be "new" "if it is not duplicative or cumulative." 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). The reasons noted by the Ridings, Riley and Smallwood courts, and, indeed, footnote 3 of Alexander, are in accord with Wilkins' definition of "new" and "material." Duplicative or cumulative evidence will not meet the test for remand

---

[1] Such an approach also is consistent with the footnote 3 in the Alexander opinion, where the court noted that a remand to consider "interim" evidence is not necessary where it is clear upon review of such "'interim' evidence that the Commissioner's underlying decision is, or is not, supported by substantial evidence." Alexander, 14 F. Supp. 2d at 844 n.3.

10

under Riley, Ridings, Smallwood, and footnote 3 of Alexander, nor will additional evidence submitted to the Appeals Council that has no reasonable possibility of changing the outcome. This approach also is consistent with the Fourth Circuit's opinion in Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996), where the court noted that it is the duty of the ALJ, and not a reviewing court, to resolve conflicts in the evidence.

### B. Whether the New Evidence Necessitates a Remand

In this case, the totality of the Appeals Council's response to plaintiff's new evidence is as follows:

> In looking at your case, we considered ... the additional evidence listed on the enclosed Order of Appeals Council. We found this information did not provide a basis for changing the Administrative Law Judge's decision.

(R. 7-8)

As discussed above, if the new evidence creates a "conflict," is "contradictory," or "calls into doubt any decision grounded in the prior medical reports," the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, the case can be decided on the existing record without the necessity of a remand.

In making this decision, the court must decide whether plaintiff's submission to the Appeals Council is (a) new, (b) material and (3) relates to the period prior to the ALJ decision. Wilkins, 953 F. 2d at 95.

It appears from the record that plaintiff's thoracic spine was examined by MRI in 2000. At that time, the MRI study "revealed the presence of degenerative disc disease and a small paramedian disc herniation at T6-T7 level." (R. 283) The January 26, 2004 MRI, in contrast,

11

shows a much more substantial problem at the same level. Thus, the January 26, 2004 MRI is neither duplicative nor cumulative. As such, under Wilkins, it is new.

The thoracic spine MRI also appears to be material. One facet of the ALJ's decision was to note the lack of objective evidence of plaintiff's claimed back pain. Indeed, the ALJ discounted Dr. Daughtery's assessment of disability because she determined that it was "not well founded on diagnostic or clinical evidence." (R. 32) The notation in the new thoracic spine MRI of a "large left paracentral disk protrusion identified at the T6-7 level [which] abuts and severely distorts the left anterior lateral aspect of the spinal cord," (R. 754), arguably presents such objective evidence. As such, it creates a conflict and calls into doubt the ALJ's decision grounded in the prior medical reports. Therefore, the new MRI examination is material.

Even so, however, an issue remains as to whether this examination should be considered as it was not done until seven months after the ALJ's decision. While, to be sure, the test postdates the ALJ's decision, Wilkins does not impose a bright line test based on the date of the test akin to a statute of limitations. Rather, the issue is whether the new and material evidence "relat[es] to the period on or before the date of the ALJ decision." Wilkins, 953 F.2d at 95. The relation between the January 26, 2004 MRI and the period prior to the ALJ's decision is clear in this case as the 2000 MRI report noted problems, albeit less severe, in the T6-7 area. Although the disc herniation at that level was noted in 2000 to be small, both MRIs note disc herniation or protrusions at the same point on plaintiff's spine. Thus, the relation between the January 26, 2004 MRI and the period before the ALJ's decision in manifest.

Further, in the March 5, 2004 cover letter to the Appeals Council, counsel for plaintiff asserted that "the Claimant was unable to obtain the MRI earlier due to financial reasons."

12

(R. 753) Given the two thoracic MRIs in the record and the short period of time between the ALJ's decision and the January, 2004 MRI, it is clear that the Commissioner needs to fully evaluate this evidence. As such, this case will be remanded to the Commissioner to weigh and resolve the conflicting evidence reflected in the January 26, 2004 thoracic spine MRI.

## CONCLUSION

For the reasons outlined above, in an accompanying Order entered into this day, defendant's motion for summary judgment will be denied and this case remanded to the Commissioner for consideration of this new and material evidence.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Enter this 16 day of August, 2005.

Michael F. Urbanski
United States Magistrate Judge

13